Filed 3/24/16  P. v. Jones CA4/2

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## FOURTH APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | |
| Plaintiff and Respondent, | E061729 |
| v. | (Super.Ct.No. SWF1302341) |
| LEROY NAPOLEAN JONES, | O P I N I O N |
| Defendant and Appellant. | |

APPEAL from the Superior Court of Riverside County.  Patrick F. Magers, Judge. (Retired judge of the Riverside Super. Ct. assigned by the Chief Justice pursuant to art. VI, § 6 of the Cal. Const.)  Affirmed.

Jennifer Peabody, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Julie L. Garland, Assistant Attorney General, and Peter Quon, Jr. and Stacy Tyler, Deputy Attorneys General, for Plaintiff and Respondent.

1

# I. INTRODUCTION

Defendant and appellant, Leroy Napolean Jones, was convicted by a jury of one count of robbery. (Pen. Code, § 211, count 1.)[1] The trial court found that defendant had three prior strike convictions (§§ 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2)(A)), one prior serious felony conviction (§ 667, subd. (a)), and one prison prior (§ 667.5, subd. (a)). The court denied defendant's *Romero*[2] motion to dismiss two of his three prior strikes, and sentenced defendant to 31 years to life[3] in state prison.

On appeal, defendant makes three contentions. First, he contends the judgment must be reversed because the trial court violated sections 1163 and 1164 by not sending the jury back for further deliberations after several jurors expressed confusion over the verdict. Next, he asserts the trial court's explanation of the concept of aiding and abetting was legally incorrect and prejudicial. Last, he claims the trial court abused its discretion in refusing to dismiss two of his three prior strikes, which all arose from one incident in 1992, and his sentence constitutes cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments. We reject defendant's contentions and affirm the judgment.

---

[1] All further statutory references are to the Penal Code unless otherwise indicated.

[2] *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497.

[3] Defendant was sentenced to 25 years to life on count 1, a consecutive five-year term for the prior violent felony conviction, and a consecutive one-year term for the prison prior.

## II.  BACKGROUND FACTS

At approximately 12:13 p.m. on August 28, 2013, defendant walked into Jenny's Donuts, located in San Jacinto, California.  He purchased a donut and asked Marina Lynn, the owner of the store, whether she was alone.  Although her five-year-old son watched television in a back room, she replied that she was alone, and defendant left.  Minutes after defendant left the store, a man wearing a hat, sunglasses, and a blue shirt with an emblem on the back of the neck entered the store, pointed a gun at the victim, and took all of the money, approximately $200, from the store's register.  Defendant's visit to, and the robbery of, Jenny's Donuts were captured on videotape.  In the videotape, defendant wore a black shirt with a white "ECKO U" logo, blue shorts, and white socks.

Shortly after the robbery, police stopped a tan-colored Chevrolet Venture that matched the description of a vehicle related to the robbery of Lynn.  Defendant was a passenger inside the vehicle.  Lynn was transported to the scene, where she positively identified defendant as the person who bought a donut from her, and who asked if she was alone, immediately before the robbery.  The police did not recover any money inside the vehicle, but recovered a donut bag from the car, which Lynn identified as the same bag she had given defendant when he purchased a donut.  At the time of the traffic stop and his arrest, defendant was wearing a black shirt with "ECKO U" written in white letters, blue shorts, and white socks.

That same day, on August 28, 2013, the police went to defendant's home.  The police knocked on the door and announced their presence, but received no response.

They opened the door and found codefendant, Alphonso Lee Brooks, in the living room of defendant's home. The police recovered $160 in small denominations from the living room and from a bedroom. The police also collected from the living room a blue Under Armour shirt with an emblem on the back of the neck.

Two days prior to the robbery of Jenny's Donuts, an unidentified man wearing sunglasses and a hat walked into Rosa's Juice Bar. This man pointed a gun at the employees, including Claudia Mitchell, and took approximately $200 from the register. Just before the robbery, a witness who was doing laundry at the same shopping center as the Rosa's Juice Bar noticed two men, one of whom was wearing a black and white shirt with a logo, acting in a suspicious manner in front of and around the juice bar.

When the police viewed the surveillance videotapes from both robberies, they noted that the perpetrators were wearing the exact same clothing at the robberies of Jenny's Donuts and Rosa's Juice Bar, and that they both had the same body types as defendant and Brooks.

## III. PROCEDURAL HISTORY

On December 24, 2013, an information charged defendant and Brooks with the robbery of Lynn at Jenny's Donuts (§ 211, count 1), and the robbery of Mitchell at Rosa's Juice Bar (§ 211, count 2). It was also alleged defendant had previously been convicted of a serious felony (§ 667, subd. (a)), had suffered three prior strikes (§§ 667, subds. (c), (e)(2)(A), 1170.12, subd. (c)(2)(A)), and had one prison prior (§ 667.5, subd. (a)).

On April 11, 2014, the trial court granted defendant's motion to dismiss the count 2 robbery of Mitchell at Rosa's Juice Bar, but only as to defendant. (§ 995.) On June 16, 2014, the trial court denied defendant's motion to sever his trial from Brooks's trial. The jury was ultimately unable to reach a verdict as to Brooks on both counts, and the court declared a mistrial. Brooks subsequently pled guilty to the count 1 robbery charge of Lynn at Jenny's Donuts.

As noted, the jury found defendant guilty as charged in count 1 of the robbery of Lynn at Jenny's Donuts.

## IV. DISCUSSION

A. *The Trial Court Was Not Required to Send the Jury Out for Further Deliberations*

### 1. Background—Jury Verdict

At the end of the first day of jury deliberations, the jury sent the court a note: "Considering count 1, if we don't find Brooks guilty (if we can't determine he is the perpetrator) can we find [defendant] guilty?" The district attorney and counsel for Brooks opined defendant could still be convicted even if the jury did not convict Brooks, but the court disagreed, explaining that, if the jury acquitted Brooks but convicted defendant, the court would have to grant defendant's motion for judgment of acquittal for insufficient evidence (§ 1118.1), as there was insufficient evidence linking defendant to a perpetrator other than Brooks. The court answered "[n]o" to the jury question.

The following morning, the district attorney asked the court to reconsider its answer to the jury question. The court acknowledged a person could be convicted as an

5

aider and abettor regardless of the identity of the perpetrator, but declined to change the answer it had given the jury. Immediately after the court reiterated it would not change its answer to the jury question, the clerk announced the jury had reached a verdict.

After the jury returned its guilty verdict against defendant on count 1, the trial court asked: "Ladies and gentlemen of the jury, is this your verdict?" (§ 1149.) The jury responded: "Yes, it is." The court began to poll Jurors Nos. 1 and 2, but again asked: "The verdict that was signed was a guilty of robbery with respect to [defendant]. Is that the unanimous finding of the jury?" The jury again responded: "Yes."

Immediately after this response, Jurors Nos. 1, 9, and 12 advised the trial court they believed they were convicting defendant for aiding and abetting, not for actual robbery. Specifically, Juror No. 9 stated: "You told us that they were going—they both had to be the same." The court explained: "Well, as far as—as far as the verdict is concerned, the verdict that was signed is guilty of robbery with respect to [defendant] under count 1. That's what was signed." Juror No. 12 then asked: "It's not aiding and abetting?" Juror No. 1 added: "It should have been aiding and abetting." Juror No. 9 also began to comment that "[a]iding and abetting is what we—" before the district attorney interrupted with, "[a]iding and abetting of robbery." The district attorney further clarified: "I think the concern—that was under an aiding and abetting theory as presented by the People."

The trial court advised the jury that, "as the instruction indicates, it doesn't make any difference whether you're a direct perpetrator or aider and abettor. If you find

6

beyond a reasonable doubt that either one or the other, then both are equally guilty, if you find beyond a reasonable doubt that you were either the perpetrator or aider and abettor." Juror No. 8 asked for further clarification, explaining that "a lot of us believed it was supposed to be count 1 but for aiding and abetting, not for actual robbery." Juror No. 9 agreed with Juror No. 8's statement.

The court then reread CALCRIM No. 400 to the jury, which stated, in pertinent part: "A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator." It also reread CALCRIM No. 401, which set forth the following elements necessary to convict defendant as an aider and abettor: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime."

After rereading CALCRIM Nos. 400 and 401 to the jury, the trial court asked the jury: "Does that help? [¶] Folks, do you want to go back into the jury room and further discuss this?" Juror No. 2 responded: "I don't believe it will clarify anything for us because we interpreted it as being separate from one another." The court then explained that, "as the jury instructions indicate, you evaluate the evidence as to each defendant separately" as "each individual defendant is entitled to [the jury's] individual evaluation

7

of the evidence." The court asked, "[d]oes that make sense?," to which Juror No. 2 responded, "[y]es." The trial court again cautioned the jury that "if there is any hesitation about [the count 1 robbery conviction], I really need to know."

It then polled the jury to confirm whether each juror voted to convict defendant of the count 1 robbery charge. Each juror confirmed it was his or her verdict to convict defendant of robbery in count 1, and the court announced it was "satisfied with the polling," would record the verdict, and would excuse the jury "unless there is anything else." Counsel for both defendant and for Brooks responded: "That's fine." The trial court then excused the jury.

2. Analysis

Defendant contends the trial court violated sections 1163 and 1164 by not sending the jury back for further deliberations after several jurors "disagreed with the verdict," and he claims this error violated his Fifth, Sixth, and Fourteenth Amendment rights to a trial by jury, a finding by an impartial unanimous jury, a fair trial, and due process of law.

Because defendant failed to make a request to the trial court to send the jury back for further deliberations, he has forfeited his right to assert that the trial court erred. (See *People v. Lessard* (1962) 58 Cal.2d 447, 452 ["Where a jury is incompletely polled [pursuant to § 1163] and no request is made for correcting the error, such further polling may be deemed waived by defendant, who cannot sit idly by and then claim error on appeal when the inadvertence could have readily been corrected upon his merely directing the attention of the court thereto."].) In any event, there was no error.

Section 1163 states:  "When a verdict is rendered, and before it is recorded, the jury may be polled, at the request of either party, in which case they must be severally asked whether it is their verdict, and if any one answer in the negative, the jury must be sent out for further deliberation."  Because neither defendant nor Brooks requested the jury to be polled, section 1163 is inapplicable.  (*People v. Lessard*, *supra*, 58 Cal.2d at p. 452 ["The polling of the jury is a right available only upon the request of either party. [Citation.]  A failure to make a proper request imposes no burden upon the court to poll the jury, nor in the absence of such request does a failure to so poll constitute a denial of a constitutional right."].)

Section 1164, subdivision (a) explains, in pertinent part:  "If any juror disagrees [with the verdict], the fact shall be entered upon the minutes and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury shall, subject to subdivision (b), be discharged from the case."  A jury's verdict is complete when it has been received and read by the clerk, acknowledged by the jury, and recorded.  (*People v. Garcia* (2012) 204 Cal.App.4th 542, 551.)

When the jurors are polled, and the jurors' answers to a jury poll are equivocal, the trial court is permitted to inquire further and seek clarification from the jurors rather than sending the jury out for further deliberations.  (*People v. Carrasco* (2008) 163 Cal.App.4th 978, 986-989, 991-992, fn. 4.)  If a juror first answers equivocally, but then directly states that the verdict is his, his last answer may be accepted.  (*Id.* at pp. 991-992, fn. 4; *People v. Burnett* (1962) 204 Cal.App.2d 453, 458.)

9

In *Carrasco*, one of the jurors was equivocal when asked during polling how she reached her decision to convict the defendant. The court spoke with the juror to clarify why she seemed unsure of her verdict, to which the juror expressed that she was having second thoughts once she learned she was convicting the defendant of a felony. After reviewing the jury instruction with the juror, the trial court explained to the juror that her role was to determine whether the defendant had committed the crimes charged, not to consider the issue of punishment or penalty. The trial court again asked the juror: "I want to be satisfied that your vote for guilt as to count 2 . . . ; count 3 . . . ; count 4 . . . , that you were satisfied that based upon the evidence you heard, again, and the instructions on the law that I gave you, the arguments of the attorneys, you were satisfied that those charges have been proved beyond a reasonable doubt; is that correct?" (*People v. Carrasco*, *supra*, 163 Cal.App.4th at p. 988.) The juror answered, "[y]es" (*id.* at p. 989), and neither side asked for further deliberations before the trial court accepted the verdict (*id.* at pp. 991-992, fn. 4). The *Carrasco* court concluded that "[u]der these circumstances, the trial court properly accepted the juror's last answer." (*Ibid.*)

Similarly here, five jurors expressed hesitation regarding defendant's robbery conviction, as they believed they were convicting defendant of "aiding and abetting, not for actual robbery." Neither counsel for defendant nor for Brooks asked the court to send the jury back for further deliberations, even though the court gave them the opportunity to do so. Furthermore, the trial court properly inquired further of the jurors after several expressed confusion over the verdict, and it was permitted to accept the jury's subsequent

10

response that they had unanimously agreed to convict defendant, rather than sending the jury back for further deliberations. (*People v. Carrasco*, *supra*, 163 Cal.App.4th at pp. 991-992, fn. 4.) After rereading CALCRIM Nos. 400 and 401, and after it advised the jurors that they each had to "evaluate the evidence as to each defendant separately . . . because each individual defendant is entitled to your individual evaluation of the evidence," the trial court properly accepted the jurors' last answer that they each decided to convict defendant of robbery in count 1. (*Ibid.*)

We also reject defendant's assertion that the trial court "coerced" or "coaxed the jury into agreeing with the verdict" rather than sending the jury back for further deliberations. Although sections 1163 and 1164 "are intended to reduce the likelihood of a trial court unduly, even if inadvertently, influencing the jury to reach a particular outcome," "asking the jury to clarify its verdict [does] not contravene the procedural requirements of the statutory scheme . . . ." (*People v. Carbajal* (2013) 56 Cal.4th 521, 530-532.)

In any event, the trial court's decision not to send the jury back for further deliberations was harmless under the standard of *People v. Watson* (1956) 46 Cal.2d 818, 836, which applies to claims of "procedural shortcomings," such as violations of sections 1163 and 1164. (*People v. Anzalone* (2013) 56 Cal.4th 545, 555-556.) The *Watson* harmless error standard requires the reviewing court to determine whether "'there is a reasonable probability that in the absence of the error [defendant] would have obtained a more favorable result. [Citations.]'" (*People v. Anzalone*, *supra*, at p. 553.) Although

11

the jurors were initially confused whether they had convicted defendant for "aiding and abetting, not for actual robbery," the trial court reread CALCRIM Nos. 400 and 401 to the jury, and it explained that "as the jury instructions indicate, you evaluate the evidence as to each defendant separately . . . because each individual defendant is entitled to your individual evaluation of the evidence." Because CALCRIM No. 400 specifically stated that "[a] person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator," it addressed the jury's misunderstanding whether it could convict defendant of robbery if it believed defendant was the aider and abettor rather than the direct perpetrator. Because the jury received proper instructions that addressed whether defendant could be convicted of the count 1 robbery charge under an aiding and abetting theory, it was not reasonably probable that defendant would have obtained a more favorable result had the trial court sent the jury back for further deliberations.

B. *The Trial Court's Comment That an Aider and Abettor is Equally as Guilty as the Perpetrator Was Harmless*

Defendant argues that the trial court's statement that an aider and abettor and a direct perpetrator are "equally guilty" was legally incorrect and violated his Fifth, Sixth, and Fourteenth Amendment rights to a fair trial, a trial by jury, and to due process of law, as an aider and abettor's criminal liability must be determined from the defendant's own mens rea, independent of the intent of the direct perpetrator.

The People contend defendant forfeited this contention by failing to raise this issue in the trial court. We agree. Where instructions to the jury are potentially incomplete or

12

misleading, it is incumbent on defendant to request a modification or clarification, and his failure to do so forfeits the claim of error.**4** (*People v. Lopez* (2011) 198 Cal.App.4th 1106, 1118-1119; *People v. Samaniego* (2009) 172 Cal.App.4th 1148, 1163.) Nevertheless, we conclude that, beyond a reasonable doubt, the trial court's "equally guilty" statement did not contribute to the verdict obtained in count 1.

When several jurors expressed confusion whether they had convicted defendant of robbery, or "only" as an aider and abettor, but not of robbery, the court explained: "[A]s the instruction indicates, it doesn't make any difference whether you're a direct perpetrator or aider and abettor. If you find beyond a reasonable doubt that either one or the other, *then both are equally guilty*, if you find beyond a reasonable doubt that you were either the perpetrator or aider and abettor." (Italics added.) It then reread CALCRIM No. 400, which did not include the "equally guilty" language, but which stated: "A person is guilty of a crime whether he or she committed it personally or aided and abetted the perpetrator." It also reread CALCRIM No. 401, reminding the jury of the elements of aider and abettor liability. It then admonished the jury that it must "evaluate

---

**4** In his reply brief, defendant argues that his failure to object to the "equally guilty" language is not deemed a waiver. (*People v. Nero* (2010) 181 Cal.App.4th 504, 517-518, fn. 13.) *Nero* is inapplicable. In *Nero*, the trial court did not advise the defendant's counsel that the jury had asked a follow-up question regarding two instructions, and it did not consult with defense counsel before it answered the jury's question. Because the *Nero* defendant was not aware of the jury question, it was not afforded the opportunity to object, or to request a modification or clarification to the instruction. (*Ibid.*)

the evidence as to each defendant separately . . . because each individual defendant is entitled to your individual evaluation of the evidence."

As defendant points out, an aider and abettor may be guilty of a greater crime than the direct perpetrator if the defendant's mens rea was more culpable than that of the direct perpetrator. (*People v. McCoy* (2001) 25 Cal.4th 1111, 1117.) The reasoning in *McCoy* "leads inexorably to the further conclusion that an aider and abettor's guilt may also be less than the perpetrator's, if the aider and abettor has a less culpable mental state." (*People v. Samaniego*, *supra*, 172 Cal.App.4th at p. 1164.) Consequently, the trial court's use of the term "equally guilty" was potentially misleading, standing alone, as it suggested defendant could be convicted of robbery based on the evidence against Brooks. However, the court then made it clear that the jury had to evaluate the evidence against each defendant separately.

"'It is fundamental that jurors are presumed to be intelligent and capable of understanding and applying the court's instructions.' [Citation.] "'A defendant challenging an instruction as being subject to erroneous interpretation by the jury must demonstrate a reasonable likelihood that the jury understood the instruction in the way asserted by the defendant. [Citations.]" "'[T]he correctness of jury instructions is to be determined from the entire charge of the court, not from a consideration of parts of an instruction or from a particular instruction.' [Citations.]" [Citation.]'" (*People v. Bryant, Smith and Wheeler* (2014) 60 Cal.4th 335, 433.)

14

After rereading CALCRIM No. 400, the trial court also reread CALCRIM No. 401, which set forth the elements of aider and abettor liability, to the jury. The court also emphasized that the jury must "evaluate the evidence as to each defendant separately," and that "each individual defendant is entitled to your individual evaluation of the evidence." Based on the "entire charge of the court" (*People v. Bryant, Smith and Wheeler*, *supra*, 60 Cal.4th at p. 433), the trial court properly instructed the jury as to aider and abettor liability.

In any event, the court's "equally guilty" remark was harmless under *Chapman v. California* (1967) 386 U.S. 18, the standard that applies when a party claims a trial court's instruction "omits or misdescribes an element of a charged offense." (*People v. Samaniego*, *supra*, 172 Cal.App.4th at p. 1165.) As noted, the trial court's "equally guilty" comment was immediately followed by a rereading of CALCRIM Nos. 400 and 401, along with its explanation that the jury must evaluate the evidence as to defendant independent of any other codefendants, as "each individual defendant is entitled to your individual evaluation of the evidence." Given the instructions provided to the jury, any error by the trial court's use of the term "equally guilty" was harmless beyond a reasonable doubt, because it "'did not contribute to the verdict obtained.'" (*Neder v. United States* (1999) 527 U.S. 1, 17, quoting *Chapman v. California*, *supra*, at p. 24.)

*People v. Nero*, *supra*, 181 Cal.App.4th 504 and *People v. Loza* (2012) 207 Cal.App.4th 332, two cases that defendant relies on to support the proposition that the trial court's use of the term "equally guilty" was misleading and prejudicial, are

15

distinguishable. In *Nero,* the "equally guilty" language was from CALJIC No. 3.00 (*People v. Nero*, *supra*, at p. 510, fn. omitted ["'*Each principal, regardless of the extent or manner of participation, is equally guilty*. Principals include those who directly and actively commit or attempt to commit the acts constituting the crime, or, two, those who aid and abet the commission or attempted commission of a crime.'"]), while in *Loza* it was included in the former version of CALCRIM No. 400 (*People v. Loza*, *supra*, at p. 348, fn. omitted ["'A person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it . . . .'"]). Here, the version of CALCRIM No. 400 that the trial court provided to and read to the jury did not include the "equally guilty" language that the *Nero* and *Loza* courts concluded were misleading and prejudicial.

C. *The Trial Court Did Not Abuse Its Discretion in Denying Defendant's Romero Motion*

    1. <u>Background—*Romero* Motion</u>

When he was 21 years old, defendant suffered his three prior strikes when he was convicted on April 15, 1992 of kidnapping (§ 207, subd. (a)), rape—incapable of consent (§ 261, subd. (a)(1)), and anal/genital penetration by object/force (§ 289, subd. (a)(1)). From that same incident, defendant was also convicted of oral copulation of a minor under the age of 14 by someone 10 or more years older (§ 288a, subd. (c)(1)) and two counts of assault with a deadly weapon (§ 245, subd. (a)(1)).

For these crimes, defendant was sentenced to 26 years in state prison, but was released on parole in 2005 after serving 13 years. He violated parole within four months

16

of his release, and he violated parole four times between 2006 and 2008, before finally being discharged from parole in 2009.

In 2005 and 2009, defendant was convicted of driving under the influence. (Veh. Code, § 23152, subd. (b).) In 2011 and 2012, defendant was convicted of failing to register as a sex offender. (Pen. Code, § 290.018, subd. (b).)

At the hearing on defendant's *Romero* motion to dismiss two of his three prior strikes, defense counsel argued that defendant's "role in this particular crime was very minimal." Counsel also pointed out that defendant's strikes were all from a single incident in 1992, and, because the strikes were "very, very old, . . . he deserves not to be sentenced to twenty-five to life for this particular crime, but something less . . . ." The People opposed defendant's *Romero* motion, arguing that defendant's prior strikes and the current offense were violent in nature. The People also pointed out that defendant was convicted of multiple driving under the influence charges and failed to register as a sex offender, and argued that defendant's conduct "is exactly the type of conduct the three-strikes law was enacted to detect, to make sure that such individuals are kept off the streets to keep the citizens safe."

The trial court denied defendant's *Romero* motion, noting defendant's multiple parole violations. The trial court stated that it was "not really considering the [driving under the influence charges]" but that its analysis focused on defendant's strikes. Although the strikes were very old, the court found them to be very serious, pointing out defendant was sentenced to 26 years in prison. Given the serious nature of defendant's

17

prior strikes, along with his multiple parole violations, it denied defendant's motion, commenting that it did "not feel that this is an appropriate case for the Court to grant the *Romero* motion and dismiss any of the strikes."

2. <u>Analysis</u>

Defendant contends the trial court abused its discretion when it declined to dismiss two of his three prior strike convictions, because all three strikes arose from a single incident in 1992. We reject this contention.

The "Three Strikes initiative, as well as the legislative act embodying its terms, was intended to restrict courts' discretion in sentencing repeat offenders." (*People v. Superior Court (Romero)*, *supra*, 13 Cal.4th at p. 528.) Thus, when a court is asked to dismiss prior strikes in "furtherance of justice" (§ 1385, subd. (a)), it "must consider whether, in light of the nature and circumstances of his present felonies and prior serious and/or violent felony convictions, and the particulars of his background, character, and prospects, the defendant may be deemed outside the ['Three Strike' law's] spirit, in whole or in part, and hence should be treated as though he had not previously been convicted of one or more serious and/or violent felonies." (*People v. Williams* (1998) 17 Cal.4th 148, 161.) Examples of factors that a court may consider include the length of time between the commission of the prior strikes and the current crime (*People v. Bishop* (1997) 56 Cal.App.4th 1245, 1251), and whether the current or past offenses involved violence (*People v. Myers* (1999) 69 Cal.App.4th 305, 308-310). Most importantly, the court must look to the defendant's conduct between the commission of the strike and the

18

current crime. (*People v. Williams*, *supra*, at p. 163.) Also, a defendant who suffers multiple convictions for violent crimes arising out of a single act, but that affects multiple victims, can be deemed to have suffered multiple strikes under the Three Strikes law. (*People v. Rusconi* (2015) 236 Cal.App.4th 273, 280-281.)

A court's failure to dismiss or strike a prior conviction allegation is subject to review under the deferential abuse of discretion standard. (*People v. Carmony* (2004) 33 Cal.4th 367, 374.) "'"[T]he burden is on the party attacking the sentence to clearly show that the sentencing decision was irrational or arbitrary. [Citation.] In the absence of such a showing, the trial court is presumed to have acted to achieve legitimate sentencing objectives, and its discretionary determination to impose a particular sentence will not be set aside on review."'" (*Id.* at pp. 376-377.)

Here, the trial court did not abuse its discretion in denying defendant's *Romero* motion, as the court recognized that defendant's past strikes and the current offense involved the use of violence, and that defendant repeatedly violated the law between the commission of his prior strikes and the current crime. On this basis, the trial court reasonably determined that defendant fell within the spirit of the Three Strikes law.

D. *Defendant's Sentence Does Not Constitute Cruel and/or Unusual Punishment*

Defendant also argues that his sentence violates the federal constitutional proscription against cruel and unusual punishment because his sentence is grossly disproportionate to the severity of the crime. However, at least one court has concluded that a "third striker's 25-year-to-life term is not cruel and unusual under the Eighth

Amendment," particularly where the defendant, as defendant here, committed a felony offense after being convicted of at least two prior "serious" or "violent" felonies. (*People v. Cooper* (1996) 43 Cal.App.4th 815, 823.) This is because, "[u]nder the three strikes law, defendants are punished not just for their current offense but for their recidivism. Recidivism in the commission of multiple felonies poses a danger to society justifying the imposition of longer sentences for subsequent offenses." (*Id.* at pp. 823-824.) "By enacting the three strikes law, the Legislature acknowledged the will of Californians that the goals of retribution, deterrence, and incapacitation be given precedence in determining the appropriate punishment for crimes. Further, those goals were best achieved by ensuring 'longer prison sentences and greater punishment' for second and third 'strikers.'" (*Id.* at p. 824.) As a third strike offender who committed "a felony offense after being convicted of at least [two] prior 'serious' or 'violent' felonies" (*id.* at p. 823), defendant's sentence does not constitute cruel or unusual punishment.

## V. DISPOSITION

The judgment is affirmed.

NOT TO BE PUBLISHED IN OFFICIAL REPORTS

RAMIREZ
P. J.

We concur:

CODRINGTON
J.

20

SLOUGH

J.